**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                            :
LAWRENCE V. RAY,                            :
                                            :
                                            :
        Plaintiff,                          :          Civil Action No. 07-2812 (JAP)
                                            :
                v.                          :          **OPINION**
                                            :
TOWNSHIP OF WARREN, *et al.*                :
                                            :
                                            :
        Defendants.                         :
_____:

PISANO, District Judge

        This is an action by plaintiff, Lawrence Ray ("Ray" or "Plaintiff"), seeking damages

under 42 U.S.C. § 1983 and state law alleging that several officers of the Warren Township

Police Department engaged in an unlawful search of Plaintiff's residence.  Presently before the

Court is a motion by Defendants, Township of Warren, Warren Township Police Department,

Police Officers Russell Leffert, Angelo Paolella, Joseph Cohen, and Donald Calabrese (the

"Defendant Officers"), and Chief of Police William Stahl, for summary judgment based upon

qualified immunity and New Jersey's Tort Claims Act.  For the reasons set forth below,

Defendants motion is granted as to Plaintiff's § 1983 claim insofar as the Defendant Officers

are sued their individual capacities, and is granted as to Plaintiff's state law claims.

I.  Background

        As Plaintiff states in his complaint, at all relevant times "Plaintiff and Theresa Ray, his

then wife, were in the process of a very contentious divorce." Compl. ¶ 23.  On June 17, 2005,

Defendant police officers Angelo Paolella,[1] Donald Calabrese, Larry Frank[2] and Joseph Cohen

(collectively, the "Responding Officers") of the Warren Township Police Department were

called to Plaintiff's residence.  *See* Police Report at Def. Ex. B; Pl. R. 56.1 Statement at 6.  On

that evening, Theresa Ray, went to Plaintiff's home to pick up their five-year-old daughter,

allegedly pursuant to a visitation order.[3]  Ms. Ray rang the doorbell and observed a man inside

the house that she believed to be Plaintiff "completely ignoring" her presence at the door.

Deposition of Theresa Ray ("T. Ray Dep.") at 106, attached Ex. 9 to Declaration of Paul

Levinson.  Ms. Ray continued to ring the doorbell and knock, and waited several minutes.  *Id.*

at 110.  Finally, after receiving no response, she called the police when she became

"concern[ed] for her child."  *Id.* at 111.

Officer Paolella testified that when he arrived at the scene, Ms. Ray "seemed upset" and

"concerned for her daughters well being."  Deposition of Officer Paolella ("Paolella Dep.") at

89, attached as Exhibit B to Certification of Juan Fernandez.  He stated that the officers

"[k]nocked and beat on every door and . . . sliding glass door of the home" and but received no

response.  *Id.* at 94.  Officer Paolella then had the dispatcher call the home phone of the

residence but no one inside answered.  *Id.* at 95.  The police then walked around the house to

---

[1]Paolella was the commanding officer on the scene.  Paolella Dep. at 98.

[2]Larry Frank is not a party to this case.

[3]Plaintiff alleges that a question of fact exists as to whether Ms. Ray was entitled to visitation that evening.  Pl. Brf. at 3.  However, to the extent that this fact may be disputed, it is not material.

2

investigate.  T. Ray Dep. at 128.

According the police report filed by defendant Officer Calabrese, Officer Calabrese had a "heightened sense of awareness . . . that a dangerous situation might be present" because of the "acrimonious nature of the Ray's divorce proceedings and child custody disputes."  *See* Police Reports at Ex. 14 (original handwritten version), 15 (corrected/altered version) to Declaration of Paul Levinson.[4]  As a result, Paolella told Calabrese to consult municipal court Judge Richard Sasso regarding the situation.  Paolella Dep. at 104.  Officer Calabrese advised Judge Sasso of his concerns, and asked whether the officers "have the ability to go into the house" to look for the child.  Calabrese Dep. at 128.  Officer Calabrese testified that he did not regard his phone call as an application for a warrant of any kind.  *Id.* at 129.  Officer Paolella, the commanding officer at the scene, similarly testified that he it was his understanding that Calabrese did not seek either a telephonic arrest warrant or search warrant from Judge Sasso.

---

[4]Officer Calabrese initially filed a report of the June 17th incident that included a reference to him having called Judge Sasso prior to the police entering the house.  *See* Report at Ex. 14.  A few days later, Officer Calabrese was called into a meeting with the Chief of Police and Lieutenant Leffert, in which Officer Calabrese was advised to remove the reference in the report to Judge Sasso.  Calabrese Dep. at 164, 168-169.  A new report was omitting the reference to Judge Sasso was filed.  *See* Report at Ex. 15.  Plaintiff alleges this was done to cover-up Sasso's involvement, but admits the improper alteration of a police report in this case does not itself rise to a constitutional violation.  Pl. Br. at 5.  "[M]ere allegations of a police cover-up, without allegations of "actual deprivation [of] or damage [to]" constitutional rights, fails to "state an adequate claim for relief under section 1983."  *Green v. New Jersey State Police*, 2006 WL 2289528, *4 (D.N.J. 2006) (citing *Landrigan v. City of Warwick*, 628 F.2d 736, 742-43 (1st Cir.1980).

Paolella Dep. at 104.  According to Officer Calabrese, Judge Sasso advised Officer Calabrese

that under the circumstances the police could enter the home.  Calabrese Dep. at 129.

According to Judge Sasso, the authorization given to the officers was an arrest warrant.

Sasso Dep. at 52, 59.  Subsequently, Judge Sasso entered a written arrest warrant for Plaintiff,

which was later voided.  Pl. Ex. 17.

The police officers entered Plaintiff's home through an unlocked but obstructed door on

the side of the house.  Deposition of Larry Frank ("Frank Dep.") at 55-56.  The unlocked door

was secured by a plank of wood that was intended to secure the door from opening.  T. Ray

Dep. at 53.  Officer Paolella used a 'slim jim' to clear the wood beam that was obstructing the

door and the officers gained entry.  Frank Dep. at 73-74.

Inside the home, Officer Paolella encountered Plaintiff's father, Larry Grecco.  Paolella

Dep. at 162.  Grecco testified that he was sleeping on the couch and woke up to see police

standing in the kitchen.  Grecco Dep. at 34-35.  Grecco advised the officers that Plaintiff was

not home and that he did not know where he was.  *Id.* at 47.  The police searched the house for

Plaintiff and the child.  *Id.*   They were in the house approximately 20 minutes, and did not find

Plaintiff or his daughter in the home.

## II.  Analysis

Plaintiff brought this action against the Township of Warren, Warren Township Police

Department, Police Officers Russell Leffert, Angelo Paolella, Joseph Cohen, and Donald

Calabrese in their individual and official capacities, and Chief of Police William Stahl in his

official capacity alleging that the June 17 incident violated his Constitutional right against

unreasonable searches protected by the Fourteenth Amendment. *See New Jersey v. T.L.O.*, 469

U.S. 325, 334, 105 S.Ct. 733, 738 (1985) ("the Federal Constitution, by virtue of the Fourteenth

Amendment, prohibits unreasonable searches and seizures by state officers.") quoting *Elkins v.*

*United States*, 364 U.S. 206, 213, 80 S.Ct. 1437, 1442, 4 L.Ed.2d 1669 (1960).  Section 1983

provides for a private cause of action to be brought by those individuals deprived of rights

secured under the United States Constitution.  "To establish a section 1983 civil rights claim, a

plaintiff must demonstrate that the conduct complained of was committed by a person acting

under state law and that the conduct deprived him of rights, privileges or immunities secured by

the Constitution."  *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994) (internal

quotation marks omitted). Plaintiff also has asserted several state law claims: Count II--

"Violation of New Jersey Tort Claims Act," Count III-- Invasion of Privacy, Count IV--

Trespass, and Count V--Intentional Infliction of Emotional Distress.

Defendants move for summary judgment asserting that the Defendant Officers are

entitled to qualified immunity and Plaintiff's state law claims are barred by New Jersey's Tort

Claims Act, 59:9-2(d).

A.  Summary Judgment Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts

are critical or "material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party.  *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial.  *Id.* at 324.  In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).          The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party.  *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.  If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment.  *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## B.  Qualified Immunity

Qualified immunity is an affirmative defense intended to shield government officials performing discretionary functions from liability for civil damages, provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Municipalities and individuals sued in their official capacity are not accorded qualified immunity; only police officers sued in their individual capacities may assert this defense.  *See Owen v. City of Independence*, 445 U.S. 622, 650 (1980) (rejecting the claim that municipalities are afforded qualified immunity); *W.B. v. Matula*, 67 F.3d 484, 499 (3d Cir. 1995) ("the doctrine of qualified immunity shields officials acting only in their individual capacities").  Qualified immunity is a matter of law to be decided by the Court.  *See Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004) ("The court must make the ultimate determination on the availability of qualified immunity as a matter of law.").

In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court held that a claim of qualified immunity must be analyzed using a two-step inquiry.  In the first step, the court examines whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right.  *Saucier,* 533 U.S. at 201.  In the second step, the court then examines whether the right violated was "clearly established." *Saucier*, 533 U.S. at 201.  More specifically, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In *Pearson v. Callahan*, 555 U.S. --, 129 S. Ct. 808, 172 L. Ed.2d 565 (2009), the

Supreme Court revisited *Saucier's* two-step analysis.  In that decision, the Court held that the two-step *Saucier* analysis is no longer mandatory in that courts need not first determine whether the facts alleged by the plaintiff make out a violation of a constitutional right.  Rather, courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818.  Consequently, if a court first determines that the right at issue was not clearly established at the time of the offense, it need not explore the factual support for the plaintiff's allegations of a constitutional violation, and may grant qualified immunity.

Government officials are shielded from liability if they act "reasonably but mistakenly." *Anderson,* 483 U.S. at 641.  "[T]he Supreme Court has emphasized that the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (*abrogated on other grounds* by *Curley v. Klem,* 499 F.3d 199 (3d Cir. 2007)).  A court must therefore objectively evaluate whether a reasonable officer would comprehend that his actions at the time violated clearly established law.  *See Anderson*, 483 U.S. at 639 ("Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action...assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken.").  In other words, a court must judge the reasonableness of the action "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

8

hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).  Thus, "[t]his immunity is broad in scope and protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The Third Circuit clarified that, "[a]t the risk of understating the challenges inherent in a qualified immunity analysis, we think the most helpful approach is to consider the constitutional question as being whether the officer made a reasonable mistake of fact, while the qualified immunity question is whether the officer was reasonably mistaken about the state of the law." *Curley*, 499 F.3d at 214.

At issue in this case is Plaintiff's rights under the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.   In particular, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313, 92 S. Ct. 2125, 32 L. Ed.2d 752 (1972). Thus, "[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed.2d 639 (1980) (internal quotations omitted).

This presumption of unreasonableness, however, can be overcome. "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).  Defendants argue that one of these exceptions, the "community caretaking" doctrine, is applicable here.

> The community caretaking exception recognizes that the police perform a multitude of community functions apart from investigating crime. In performing this community caretaking role, police are 'expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing and provide an infinite variety of services to preserve and protect public safety.'

*U.S. v. Smith*, 522 F.3d 305, 313 (3d. Cir. 2008) (quoting *United States v. Coccia*, 446 F.3d 233, 238 (1st Cir.2006).

This exception was first recognized by the Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). In *Dombrowski*, the local police searched the defendant's disabled and towed vehicle after an automobile accident. The owner of the vehicle was a police officer who the local police believed was required to carry a service weapon at all times, and it was the local department's standard procedure to remove weapons from vehicles in order "to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." *Id.* at 443, 93 S.Ct. 2523. Because the search undertaken was a result of a function "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," the Court found it to be permissible. *Id.* at 441, 93 S.Ct. 2523.

Since *Cady*, many courts have extended the community caretaking rationale in upholding warrantless searches of homes in addition to vehicles, although not all courts are in agreement on the issue. *See United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir.2006) ("A police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists requiring his or her attention."); *United States v. Rohrig*, 98 F.3d 1506, 1521-22 (6th Cir.1996) (holding that an officer's warrantless

entry into a home was reasonable and motivated by a community caretaking interest in quelling loud music that constituted a nuisance); *but see United States v. Bute*, 43 F.3d 531, 535 (10th Cir.1994) (holding that community caretaking exception applies only to automobile searches); *United States v. Pichany*, 687 F.2d 204, 208-09 (7th Cir.1982) (same).  The Court of Appeals for the Third Circuit has not yet spoken on this issue in a published opinion.

Some guidance in the instant case can be found in the Eight Circuit's decision in *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir.2006).  In that case, a law enforcement officer serving papers in a civil matter at a residence knocked on a door that turned out to be unlatched. The door opened upon the officer's knock, and the officer observed the lights and television in side the residence on.  No one responded to the knock or the announcements by the officer of his presence, and he entered the residence to ascertain whether there was someone inside who may be in need of assistance.  He found the defendant inside and a shotgun in plain view.  The Eight Circuit affirmed the trial court's determination that the officer's entry and search of the residence was reasonable under the community caretaking doctrine and therefore did not constitute a Fourth Amendment violation.  *Id.* at 1008.

Although not binding on this Court, Defendant officers rely upon the Third Circuit's unpublished decision in *Burr v. Hasbrouck Heights*, 131 Fed. Appx. 799 (3d Cir. 2005) (not precedential).  In that case, a police officer responding to a complaint that loud music was coming from plaintiff's residence entered the residence without a warrant when Burr failed to respond to his knocks on the door.  After knocking for about a minute and receiving no response, the officer entered through the unlocked door and followed the sound of the music to

a second floor bedroom.  There he found the plaintiff alone and acting somewhat bizzare.

Smelling alcohol, he and another officer had the plaintiff removed to a medical facility.  The

plaintiff filed a complaint alleging, *inter alia*, Fourth Amendment violations based on the

warrantless entry.

     The Third Circuit in *Burr* found the officers were entitled to qualified immunity.  The

court, however, found the trial court's application of the "community caretaking" doctrine as

set out in *United States v. Rohrig*, *supra*, inappropriate because the nuisance at issue in *Burr* did

not rise to the same level as that of the nuisance in *Rohrig*.  The court therefore assumed the

warrantless entry was unreasonable and violated the plaintiff's Fourth Amendment rights.

However, the court found that, under the circumstances, Burr's right to be free from a

warrantless search of her home was not clearly established.  In particular, the court noted that

Burr did not cite to any law stating that "an officer, responding to a complaint and knowing of

recent disturbances, cannot enter a home 'to make sure everything was okay.'"  *Burr*, 131 Fed.

Appx. at 802.  Recognizing that the *Burr* decision is unpublished and not precedential, the

Court nonetheless finds its reasoning persuasive.

     As in *Burr* and permitted by *Pearson*, this Court need not resolve the issue of whether

the facts establish that a constitution violation occurred here, *i.e.*, whether the "community

caretaking" doctrine created an exception to the warrant requirement in this case.  Even if the

Court were to decide that the officers' entry into the home was unreasonable and violated

Plaintiff's rights under the Constitution, the Defendant officers are nevertheless entitled to

qualified immunity.  Moving directly to the second prong of the *Saucier* analysis, the Court

finds that under the circumstances of this case, Plaintiff's right to be free from a warrantless search was not clearly established.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004). The "focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* The relevant inquiry considers not just whether the officer's actions were reasonable in light of clearly established law but also the information possessed by the officer. *See Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987) (We consider whether "a reasonable officer could have believed [his conduct] was lawful, in light of clearly established law and the information the [officer] possessed."). The Court concludes that, under the circumstances, it would not have been apparent to an objectively reasonable officer that entering Plaintiff's home on June 17, 2005 was unlawful.

The undisputed facts show that Ms. Ray was at Plaintiff's home with the intention of picking up her five-year-old daughter. After she rang the doorbell, she observed a man she believed to Plaintiff inside the house, but no one answered the door. She called the police and advised them of these facts. The responding police officers similarly knocked on doors and windows in an attempt to get an answer from someone inside, to no avail. The police also received no response when a phone call was placed to the phone number at the home. There is no dispute that the officers were told by Ms. Ray that she saw Plaintiff inside and that on that

date Plaintiff had physical custody of the five-year-old girl.

Both parties in this case admit the Ray's divorce was "contentious."  Indeed, a restraining order prohibited the Plaintiff and Ms. Ray from, for example, speaking to one another.  Deposition of Lawrence Ray, ("L. Ray Dep.") Vol. 2, at 39, attached as Ex. 1 to Levinson Cert.  Certain of the police officers were familiar with the Ray's situation as they had responded to other calls involving the couple.  Given these facts, it is reasonable that the officers, upon receiving no response to their knocks and phone call, and having been advised by Ms. Ray that she has seen Plaintiff in the house, had concern for the welfare of the young child who could be inside.

As such, a reasonable officer could have believed entry was permitted under the community caretaking doctrine.  *See State v. Bogan*, 200 N.J. 61, 75 (N.J. 2009) ("The community caretaking role of the police also extends to protecting the welfare of children. Indeed, that community caretaking responsibility is a reflection of the State's general *parens patriae* duty to safeguard children from harm.").  However, given the uncertainty in the applicable law at the time, the police officers sought legal guidance from the municipal court judge before entering the residence.  They received authorization from the judge to enter. Because under those circumstances a reasonable officer could have concluded that entering the house to look for the child was not a violation of the Fourth Amendment, the Court finds the Defendant officers are entitled to qualified immunity.  To the extent the Defendant officers are sued in their individual capacity, their motion for summary judgment is granted.

14

C.  State Court Claims

Plaintiff asserts state law claims for invasion of privacy, intentional infliction of emotional distress and trespass.  He seeks damages for "emotional distress" and "mental suffering" as well as punitive damages  *See, e.g.*, Amended Compl at ¶ 61.  Defendants allege that these state law tort claims are barred by the New Jersey Tort Claims Act.  Pursuant to N.J.S.A. 59:9-2(d),

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

Defendants assert that Plaintiff has not met the statutory threshold necessary to recover for his alleged psychological damages.  Plaintiff has not responded at all to Defendants arguments on this motion with regard to his state law claims.

Under the Tort Claims Act, a plaintiff alleging a psychological injury, such as intentional infliction of emotional distress, must show that the injury is both permanent and substantial. *Willis v. Ashby*, 353 N.J.Super. 104, 112-13 (App. Div.2002).  Plaintiff has not met this threshold.  Additionally, the Tort Claims Act also precludes an award of punitive damages against a public entity.  N.J.S.A. 59:9-2(c).  As such, Plaintiff's state law claims are dismissed.

III.  Conclusion

For the reasons above, Defendants Russell Leffert, Angelo Paolella, Joseph Cohen, and Donald Calabrese are entitled to qualified immunity.  To the extent that they are sued in their individual capacities, the complaint against them is dismissed.  Additionally, Plaintiff's state

law claims are dismissed.

The remaining claims in this matter are against the Township of Warren and the Police Department, and Leffert, Paolella, Cohen, Calabrese, and Stahl in their official capacities. The Court shall dismiss the claims against Leffert, Paolella, Cohen, Calabrese, and Stahl in their official capacities because a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them. *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). Because Plaintiff is suing the Township of Warren, the suit against the officers in their official capacities redundant. *Id.* Likewise, the claims against the Warren Township Police Department shall be dismissed. *See Pahle v. Colebrookdale Township*, 227 F.Supp.2d 361, 367 (E.D.Pa.2002) ("In § 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police departments are merely administrative agencies of the municipalities-not separate judicial entities.").

Because qualified immunity is not available to a municipality and, therefore, the Township of Warren was not the subject of the instant motion for qualified immunity, Plaintiff's § 1983 claim against it remains. To the extent that this Defendant will seek to file a dispositive motion on the remaining issues in the case, it must do so within 30 days of the date of the accompanying Order.

An appropriate Order accompanies this Opinion.


                                        /s/ JOEL A. PISANO
                                        United States District Judge

Dated: September 22, 2009